OSCN Found Document:Question Submitted by: The Honorable Ryan Walters, State Superintendent of Public Instruction

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Ryan Walters, State Superintendent of Public Instruction
2024 OK AG 11
Decided: 08/18/2024
Oklahoma Attorney General Opinions

Cite as: 2024 OK AG 11, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Whether unused funds from the School Security Revolving Fund established by House Bill 2903, 2023 Okla. Sess. Laws ch. 281, § 2, 70 O.S.Supp.2023, § 5-148.2(A), may be transitioned, or rolled over, and utilized in the following, or subsequent, fiscal year?
I.
SUMMARY
¶1 Yes, consistent with the analysis and determinations below, a school district may carry over unused funds from the School Security Revolving Fund from one year to another.
II.
BACKGROUND
¶2 In 2023, the Legislature enacted House Bill 2903, directing the State Department of Education to "establish and maintain a three-year pilot program known as the School Resource Officer Program." 70 O.S.Supp.2023, § 5-148.1. The Program was created for the express purpose of providing funds to schools for safety and security enhancements.[1] To implement the Program, the Legislature established the School Security Revolving Fund (the "Revolving Fund") and appropriated $150,000,000.00 from the State's General Revenue Fund to be "budgeted and expended by the State Department" for purposes of the Program. 70 O.S.Supp.2023, § 5-148.2. (emphasis added); House Bill 2904, 2023 Okla. Sess. Laws ch. 282, § 1.[2] Under the Program, the Department is directed to distribute no more than Fifty Million Dollars per fiscal year for the program and distributions shall be divided equally among every public school district in the state. 70 O.S.Supp.2023, § 5-148.2(C). Taken together, House Bills 2903 and 2904 require, beginning July 1, 2023, the Department to annually distribute $50,000,000.00.[3]
¶3 Yet the Department inexplicably did not send the available $50,000,000.00 to school districts to protect and enhance school safety. Instead of sending the funds directly to schools as legislatively directed - a process the Department has followed with some vendors - the Department required a school district to first expend its own funds and then wait on reimbursement from the Department.
[4] The Department also advised school districts that their funds were available for carryover throughout the three-year program period but, arbitrarily and without notice, reversed course and zeroed out the district balances.[5] Original Program Guidance https://sde.ok.gov/sites/default/files/SRO%20Funding%20Guidance%20%281%29.pdf, compare with Updated Program Guidance (https://sde.ok.gov/sro-funding). Worse, the Department waited more than a year after the effective date of the Program to ask for this office's opinion on a question that has a clear answer.[6] As detailed herein, school districts may carry over and utilize the funds consistent with the purposes of the program in future years. This outcome is indisputable for four reasons.
III.
DISCUSSION
¶4 First, the statutes do not put any fiscal year limitations on a school district's use of such funds. This office previously determined that a statute without fiscal year limitations on a specific use or restriction of a fund is evidence of legislative intent to not impose fiscal year limitations on the funds. 1983 OK AG 277, ¶ 3; see also 2005 OK AG 23(determining that surplus funds from a tax levied for specific purpose may be transferred for use in the next fiscal year). Here, the only statutory limitations regarding the Program and the Revolving Fund are that (1) the funds must be used to establish and maintain the Program, and to provide physical security enhancement grants, consistent with the enhancement set forth therein; (2) the funds shall not be used to supplant existing school security funding; and (3) the Department shall not expend more than $50,000,000 in any of the three years of the pilot program. Without any reason to disavow the 1983 determination, this office affirms that opinion as relating to the Program and the Revolving Fund. There are thus no statutory fiscal year limitations on a school district with respect to its use of Program funds.
¶5 Second, the statutes establishing the Program, the Revolving Fund, and appropriating funds use "expend" or "expenditure" only when addressing the State Department. 70 O.S. § 5-148.2(B--C) (e.g., "expended by the State Department"). Aside from generally identifying what the funds can be used for, the statutes are silent on limitations on school district methodologies and time for expending the funds. Consequently, any statutory limitations on the carryover and expenditure of funds would apply solely to the Department, not the school districts.
¶6 Third, there are no constitutional fiscal year limitations restricting the ability to carry the funds forward into a subsequent fiscal year. The Revolving Fund plainly states it is a "continuing fund, not subject to fiscal year limitations." 70 O.S.Supp.2023, § 5-148.2(A). This is significant because only the Oklahoma Constitution limits the Legislature's appropriation of money to the various State purposes and agencies; otherwise, the authority rests in the sole discretion of the Legislature. Board of Commissioners of Okla. County v. Ryan, 1924 OK 1075, 232 P. 834; In re Thomas' Estate, 1943 OK 115, 136 P.2d 929; Herndon v. Anderson, 1933 OK 490, 25 P.2d 326. One such constitutional limitation is in article V, section 55 of the Oklahoma Constitution, providing that a state agency must expend appropriated funds within thirty months or the appropriation lapses. Okla. Const. art. V, § 55. If the expenditure of funds occurs later than thirty months following the appropriation, the expenditure is invalid. Indep. Sch. Dist. No. 52 of Okla. County v. Hofmeister, 2020 OK 56, ¶ 77, 473 P.3d 475, 507. But constitutional provisions relating to appropriations and limitations thereon do not apply to special funds. Edwards v. Childers, 1924 OK 652, 228 P. 472; State ex rel. Hawkins v. Okla. Tax Comm'n, 1969 OK 118, 462 P.2d 536.[7]
¶7 Relevant here, a revolving fund, like the School Security Revolving Fund, is a special fund in the State Treasury created by legislative act. The Legislature removed any doubt of its intent by establishing the Revolving fund and unambiguously stating it was "not subject to fiscal year limitations." As a result, there are no limitations on the ability to carryover the funds in the Revolving Fund.
[8]
¶8 Finally, the Department has authorized--and continues to authorize--school districts to carryover Program funds. Notwithstanding the lack of authority to promulgate administrative rules relating to the Program and because it now ostensibly knows when it does and when it does not have rulemaking authority, the Department has instead established "House Bill 2903 Guidance" ("Guidance").
[9] In the original version of the Guidance document, the Department states as follows:
Is rollover allowable? Yes, unspent monies from previous years may be rolled over to future years. However, all monies must be encumbered by the end of year three.
https://sde.ok.gov/sites/default/files/SRO%20Funding%20Guidance%20%281%29.pdf.

¶9 Without notice, the Department removed this question and answer from the Guidance. Setting this aside for now, the Guidance also requires a school district to "only" use its General Fund for Program expenditures and reimbursements. https://sde.ok.gov/sro-funding. A school district may carry over the funds in the General Fund from one year to the next. 70 O.S.Supp.2023, § 18-200.1(G); see also Indep. Sch. Dist. No. 52 of Okla. County v. Hofmeister, 2020 OK 56, ¶ 78, 473 P.3d 475, 508 (acknowledging school districts "may have a carryover in the school district's general fund"). Accordingly, because the Department requires a school district to use its General Fund for the Program, and because state law allows a school district to carry over General Fund balances, school districts are, therefore, permitted to carry forward Program funds from one year to a subsequent year. Critically, all legislatively appropriated funds for school districts to make security enhancements under the Program must remain available to every school district.
¶10 As of July 1, 2024, the Revolving Fund has a balance of more than $128,000,000.00. See State of Oklahoma Summary of Receipts and Expenditures for Fund 293 (on file with this office). Because the Department did not distribute the funds as intended and required by law, the Department asserts that it cannot now authorize expending the prior year funds that were carried over into a subsequent fiscal year without violating the "expenditure shall not exceed $50 million in any year" language in 70 O.S.Supp.2023, § 5-148.2(C). This is incorrect. A plain reading of the statute demonstrates legislative intent to provide $50,000,000 in each of the three years of the Program. Any distribution from the Revolving Fund that would give a school district the funding it should have received in a previous fiscal year would not create an inequality of expenditures or unequal division of the funds. Instead, this corrects the Department's mismanagement that prevented school districts from receiving an equal distribution of Program Fund and an error that, in your own words, concerns and puts at risk the safety of schoolchildren.
* * *
¶11 It is, therefore, the official Opinion of the Attorney General that:
Consistent with parameters in title 70, sections 5-148.1 and 5-148.2, unused funds from the School Security Revolving Fund established by House Bill 2903, 2023 Okla. Sess. Laws ch. 281, § 2, 70 O.S.Supp.2023, § 5-148.2(A), may be transitioned, or rolled over, and utilized in the following, or subsequent, fiscal year by local school districts. The Department and State Board of Education are not authorized to sweep or move Program funds to a different account or use them for a purpose other than that intended by the Legislature as detailed herein.
[10] The safety of our State's schoolchildren requires, and this opinion directs, your immediate implementation of the Program consistent with this opinion.
GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
FOOTNOTES
[1] School districts can use funds for physical security enhancements, including "school resource officers, cameras, gates, lighting, locks, doors, windows, security geofencing, and ballistic storm shelters." 70 O.S.Supp.2023, § 5-148.1.
[2] As a companion bill to House Bill 2903, House Bill 2904 appropriated $150,000,000.00 from the State's General Revenue Fund to the Revolving Fund.
[3] The Department must expend funds upon warrants issued by the State Treasurer against claims filed by the Department with the Office of Management and Enterprise Services. 70 O.S.Supp.2023, § 5-148.2(C).
[4] https://pig.omes.ok.gov/risk-assessment-compliance (Sole Source and Direct POs, Department search and export data).
[5] This office understands that a number of school districts, understandably, relied on this advice and carried the funds forward from year one, planning to use the funds for larger enhancement projects in years 2 and 3 of the Program. Furthermore, this office understands that at the close of the most recent fiscal year (June 30, 2024); there was $128,000,000.00 remaining in the Revolving Fund. 
[6] To date, the Revolving Fund has a balance of more than $128,000,000.00. State of Oklahoma Summary of Receipts and Expenditures for Fund 293 (on file with this office). Because the Department did not distribute the funds as intended, the Department asserts that it cannot now authorize expending the prior year funds that were carried over into a subsequent fiscal year without violating the "expenditure shall not exceed $50 million in any year" language in 70 O.S.Supp.2023, § 5-148.2(C). This is incorrect. Any distribution from the Revolving Fund that would give a school district the funding it should have received in a previous fiscal year would not create an inequality of expenditures or unequal division of the funds but would merely correct an error that prevented a school district from receiving its equal distribution and correct the inequality of distributions previously created.
[7] Because the Program funds are state, and not federal, funds, this opinion does not address any limitations or requirements imposed by federal law or regulation.
[8] The use of a revolving fund for funding specific needs in public education is not uncommon. Indep. Sch. Dist. No. 52, n.139.
[9] 75 O.S.2021, § 250.3(17) (defining "rule" to mean any agency statement of general applicability and effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency); see also Indep. Sch. Dist. No. 12 v. State, 2024 OK 39, ¶¶ 34-35, ___ P.3d ___, 2024 WL 2931057 (discussing the Department lacking express authority to promulgate administrative rules).
[10] Indep. Sch. Dist. No. 52, ¶¶ 89-92, 473 P.3d at 512-14 (discussing Executive Branch's discretion concerning the expenditure of appropriated funds, legislative direction to the Executive Branch on spending appropriations, and Executive Branch officer diversion from the Legislature's will).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2005 OK AG 23, 
Question Submitted by: The Honorable Larry Glenn, State Representative, District 7
Cited

 
1983 OK AG 277, 
Question Submitted by: The Honorable Clifton H. Scott, P. A., State Auditor and Inspector
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1933 OK 490, 25 P.2d 326, 165 Okla. 104, 
HERNDON Judge v. ANDERSON et al.
Discussed

 
1969 OK 118, 462 P.2d 536, 
STATE EX REL. HAWKINS v. OKLAHOMA TAX COMMISSION
Discussed

 
1924 OK 652, 228 P. 472, 102 Okla. 158, 
EDWARDS v. CHILDERS
Discussed

 
1924 OK 1075, 232 P. 834, 107 Okla. 278, 
BOARD OF COM'RS OF OKLAHOMA COUNTY v. RYAN
Discussed

 
2020 OK 56, 473 P.3d 475, 
INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed at Length

 
2024 OK 39, 
INDEPENDENT SCHOOL DISTRICT NO. 12 v. STATE
Cited

 
1943 OK 115, 136 P.2d 929, 192 Okla. 409, 
In re THOMAS' ESTATE
Discussed

Title 75. Statutes and Reports

 
Cite
Name
Level

 
75 O.S. 250.3, 
Definitions
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA